IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| D. F.,[1]<br><br>                     Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>                     Defendant. | Case No. 3:23-cv-00241-RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br>**(Docket 10)** |

## I.  INTRODUCTION

Claimant, D.F., filed an application for Social Security Disability Insurance benefits ("SSDI") on November 11, 2020, alleging disability beginning August 6, 2020.[2] Claimant has exhausted her administrative remedies and seeks relief from this Court.[3] She argues that the determination by the Social Security Administration ("SSA") that she is not disabled, within the meaning of the Social Security Act ("the Act"),[4] is not supported by

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.
[2] Tr. 227–33.
[3] Dockets 1, 10.
[4] 42 U.S.C. § 423; 42 U.S.C. § 1381.

substantial evidence and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for further administrative proceedings, including a *de novo* hearing and decision.[5]

The Commissioner of the SSA ("Commissioner") filed an answer to the complaint and an answering brief in opposition, and Claimant has replied.[6] For the reasons set forth below, Claimant's Motion for Remand at **Docket 10** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for further proceedings.

## II. BACKGROUND

Claimant alleges that she is disabled due to rheumatoid arthritis ("RA") and a visual impairment. Her date last insured is December 31, 2025.[7] The ALJ hearing was held on August 16, 2022.[8]

### A. Claimant's Testimony

Claimant testified that she had worked as a food service aide in a nursing home for 15 years. She was diagnosed with RA in 2008 and with *Mycobacterium avium* complex ("MAC") in 2011.[9] The medications for RA make her more susceptible to MAC flareups, because they impair her immune system. Claimant's 14-year old daughter helps with cooking, housework, and taking care of Claimant's five-year old son. While she is

---

[5] Docket 10 at 28.
[6] Dockets 12, 13.
[7] Tr. 239.
[8] Tr. 50–74.
[9] The American Lung Association defines MAC Lung Disease as "an infection caused a group of bacteria called *Mycobacterium avium* complex (MAC)." https://perma.cc/CDJ4-RYHP.

*D.F. v. O'Malley*                                                Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings                         Page 2
Case 3:23-cv-00241-RRB     Document 14     Filed 12/17/24     Page 2 of 19

able to cook, she has to sit down often. She does not drive. She has trouble sleeping due to pain. She trips on unexpected objects on the floor. She experiences double-vision a "few times a week," and can only use a smart-phone for about 5 minutes before eye strain causes a headache. She testified to pain in her feet, ankles, knees, elbows, shoulders, back, and hips, with numbness in her hands and feet. Pain is increased by repetitive motions, walking, standing, sitting too long, typing, standing to do dishes or cook for too long. She has good and bad days, with bad days two or three days a week, but even on good days there is pain. She testified that her RA had worsened in the last several years, and that she is overwhelmed by the pain and poor eyesight. "Every day is a constant struggle."[10]

**B.     Medical Opinions**

Claimant has provided a thorough summary of her medical records,[11] and the Court has independently reviewed the administrative record. Generally, the medical records reflect that Claimant's RA (with "rheumatoid factor of both shoulders and left knee") was treated with arthrocentesis injections in 2019,[12] and since then she has been treated with methotrexate.[13] Claimant is "legally blind" in her right eye, and visually impaired in her left. As a result of her vision impairments, she suffers from migraines, photophobia, and nystagmus.[14]

---

[10] Tr. 55–68.
[11] Docket 10 at 3–8.
[12] Tr. 395–97.
[13] Tr. 524.
[14] Tr. 875–88.

1. **Dr. Ryan Ragle**

From March 26, 2020, through at least March 21, 2023, Claimant was treated by Dr. Ragle for recurrent MAC, bronchiectasis, right eye blindness, and seropositive rheumatoid arthritis.[15] Claimant endorsed joint pain, joint swelling, morning stiffness, and shoulder pain on multiple occasions.[16] Dr. Ragle completed an Active Rheumatoid Arthritis Assessment on March 29, 2022, wherein he opined that Claimant was *markedly* limited in her ability to stand and walk.[17] He identified morning stiffness, increased pain with extended standing or walking, difficulty with repetitive fine and gross movements, positive serologic test for rheumatoid factor, and opined that Claimant cannot sustain any type of work activity eight hours a day, five days a week, fifty weeks a year.[18] Although Dr. Ragle opined that Claimant's RA was "well controlled on relatively low-dose of methotrexate," and that she was tolerating the medication "without difficulty," 2019 x-rays showed "degenerative changes" and "multiple erosions" in Claimant's hands and feet.[19]

2. **Dale King, DPT**

A work capacity evaluation on May 6, 2022, yielded results reflecting pain behaviors that Dr. King found consistent with Claimant's self-reported pain, identifying major areas of dysfunction in dynamic strength, positional tolerance, mobility, and balance, with decreased range of motion in her hips, knees, ankles, and shoulders, and pain in

---

[15] Tr. 38–49, 524–31, 865–68, 971–87.
[16] Examples include Tr. 524, 526, 529, 571, 573, and 576.
[17] Tr. 865.
[18] *Id.*
[19] Tr. 973–74.

multiple joints affected by RA. He also found generalized fatigue.[20] Dr. King also observed that Claimant was in more pain when leaving the evaluation than when she arrived, as a result of exertional activities required for the assessment.[21] He concluded that Claimant could not perform even sedentary work on a full-time basis.

### 3. Dr. Stephen Dobson, O.D.

Records from Dimond Vision Clinic diagnose Claimant with bilateral myopia, bilateral astigmatism, bilateral strabismic amblyopia, congenital nystagmus, bilateral photophobia, and optic neuropathy.[22] She reported headaches, glare, light sensitivity, blurred vision (near and far), and Dr. Dobson deemed Claimant "legally blind" in her right eye, and visually impaired in the left.[23] Dr. Dobson has treated claimant since childhood, and indicated that her migraines started in 2018.[24] He completed a Visual Impairment Medical Source Statement indicating that Claimant's impairments were permanent, and that her symptoms were severe enough to interfere with attention and concentration needed to perform even simple work tasks.[25] Such symptoms eliminated the vocational use of a computer for extended periods. He opined that she "should be provided in the work place additional time and resources to accommodate her visual impairment."[26] He expected she would miss work twice per month, and would need unscheduled breaks

---

[20] Tr. 867–74. The Court notes that Exhibit 21-F was provided only in electronic form, and is difficult to read.
[21] Tr. 871.
[22] Tr. 552, 887.
[23] Tr. 875–88.
[24] Tr. 878.
[25] *Id.*
[26] Tr. 552.

*D.F. v. O'Malley* Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings Page 5
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 5 of 19

during an 8-hour workday due to photophobia, nystagmus, and migraines.[27] **He specifically indicated that she is not a malingerer.**[28]

4. **Non-examining state agency medical consultants**

**Dr. Jerda M. Riley, M.D.**,[29] and **Dr. King S. Leong, M.D.**,[30] generally agreed as to Claimant's ability to frequently lift and carry 10 pounds, climb stairs, and avoid high places and other hazards, but disagreed as to Claimant's ability to sit/walk/stand. While Dr. Riley opined that Claimant could do each for up to 6 hours in an 8-hour workday, Dr. Leong limited her to a total of two hours for walking/standing, and 6 hours for sitting. Dr. Riley referred to and apparently adopted an assessment provided by another non-examining State Agency Medical Consultant, **Dr. Sai Nimmagadda**, that was completed March 27, 2021.[31]

**C. ALJ Decision**

> Disability is defined in the Act as:
>
> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[32]

---

[27] Tr. 877, 879.
[28] Tr. 880.
[29] Tr. 84–92.
[30] Tr. 111–17.
[31] Tr. 87–88.
[32] 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[33] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[34] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[35]

The ALJ issued an unfavorable decision on January 25, 2023.[36] Applying the 5-step process, the ALJ concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since her alleged onset date;[37] **Step 2**, Claimant suffered from severe impairments, including "rheumatoid arthritis and visual disturbances," but found Claimant's MAC "non-severe";[38] and **Step 3**, Claimant's severe impairments did not meet any medical listings.[39]

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical

---

[33] 20 C.F.R. § 404.1520(a)(4).
[34] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[35] *Treichler*, 775 F.3d at 1096 n.1.
[36] Tr. 16–31.
[37] Plaintiff indicated that she stopped working due to a combination of her vision difficulties, breathing difficulties, and because her RA had made it increasingly difficult to work. *See* Docket 10 at 13. The Commissioner now questions Claimant's alleged onset date and her reasons for quitting her job. But the ALJ concluded that Plaintiff had not engaged in substantial gainful activity ("SGA") since **August 6, 2020**, and determined this finding consistent with Claimant's earnings records. Tr. 19. Dr. Berlon's notes indicated that "[w]hile she did file for disability during COVID the underlying situation is not directly related to concerns regarding COVID and is instead related to progression of her RA as well as underlying congenital cognitive and physical limitations that limit her job opportunities." Tr. 669.
[38] Tr. 19.
[39] Tr. 18–21.

*D.F. v. O'Malley* Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings Page 7
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 7 of 19

limitations.[40] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments.[41] This RFC assessment is used at both Steps Four and Five.[42] In evaluating her RFC, the ALJ concluded that Claimant had the capacity to perform light work, with some limitations as to heights, exposure to respiratory irritants, and depth perception/far acuity.[43]

At **Step 4**, the ALJ found that Claimant could not perform her past relevant work as a food service worker, which was medium work.[44] At **Step 5** the burden of proof shifts to the Commissioner.[45] The Commissioner can meet this burden in two ways: (a) by the testimony of a vocational expert ("VE"), or (b) by reference to the Medical-Vocational Guidelines.[46] With the assistance of a VE, the ALJ concluded that Claimant was able to perform other work in the national economy, such as cleaner/housekeeper, marker, or routing clerk.[47]

The ALJ concluded that Claimant's "severely impaired vision with her right eye . . . has been relatively stable . . . and has not prevented her from working or taking care of her children."[48] Similarly, the ALJ found that Claimant was diagnosed with RA in

---

[40] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[41] 20 C.F.R. § 404.1545(a)(3).
[42] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[43] Tr. 22.
[44] Tr. 29.
[45] *Treichler*, 775 F.3d at 1096 n.1.
[46] *Tackett*, 180 F.3d. at 1099, citing 20 C.F.R. Pt. 404, Subpt. P, App. 2.
[47] Tr. 31.
[48] Tr. 23.

*D.F. v. O'Malley*     Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings     Page 8
Case 3:23-cv-00241-RRB     Document 14     Filed 12/17/24     Page 8 of 19

2008, "and was able to work for many years thereafter despite this condition."[49] The ALJ found that Claimant's RA was "generally well-controlled with medications, including a relatively low dose of methotrexate and folate," that there was no organ or system involvement, and that Claimant is generally described as in "no acute or apparent distress."[50] The ALJ found that Claimant's ability to care for her two children, four dogs, and engage in various domestic activities suggested that she was not as limited as she claimed.[51]

## III. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[52] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[53] Such evidence is "more than a mere scintilla," but also "less than a preponderance."[54] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[55] If the evidence is susceptible to more than one rational interpretation, the

---

[49] *Id.*
[50] *Id.* (citing Exhibits 4F, 5F, 7F, 26F, 11F).
[51] Tr. 23–24.
[52] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[53] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[54] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[55] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

*D.F. v. O'Malley* Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings Page 9
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 9 of 19

ALJ's conclusion must be upheld.[56] Courts "review only the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely."[57] If an ALJ commits legal error, courts will uphold the decision if it is harmless.[58] An error is harmless if it is "inconsequential to the ultimate nondisability determination."[59] However, "[i]f there is no affirmative evidence that the claimant is malingering, the ALJ must provide **clear and convincing reasons** for rejecting the claimant's testimony regarding the severity of symptoms."[60]

## IV. DISCUSSION

Claimant argues that the ALJ committed legal errors in denying her benefits because the ALJ failed to provide clear and convincing reasons for rejecting Claimant's subjective symptom testimony and failed to properly evaluate certain medical opinions, resulting in an RFC that is not supported by substantial evidence.[61] But the Commissioner argues that the ALJ reasonably crafted the RFC after rejecting Claimant's subjective complaints, as well as the opinions of treating physicians which were consistent with those complaints.[62]

---

[56] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).
[57] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).
[58] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[59] *Id.* (citation omitted).
[60] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998|)).
[61] Docket 10 at 18–28.
[62] "Dr. Dobson's opinion is not strengthened by its consistency with evidence that has been properly discounted." Docket 12 at 14.

A. **Claimant's Activities and Credibility**

Claimant argues that the ALJ erred in rejecting her subjective symptom testimony.[63] The ALJ found, and the Commissioner argues, that Claimant cares for her two children and four dogs, prepares meals, handles household chores, and can mow the lawn or shovel snow for 2 hours. They conclude that all of these activities are consistent with light work activity. In reaching this conclusion, the ALJ and the Commissioner rely on an October 20, 2021, Function Report, wherein Claimant provided handwritten answers to open-ended questions.[64] Those answers indicated that she could do laundry or mow or shovel for "two hours," but the answer continued "and I hurt every time after." She then wrote that she hires someone to shovel due to pain. Claimant also stated, in the same paragraph, that she can do dishes for only 30 minutes.[65] The ALJ did not seek clarification from Claimant, nor did the ALJ address the inconsistencies or the fact that performing these activities caused Claimant pain. But the Commissioner argues that an "ALJ [does] not need to include in [a] list of [a claimant's] daily activities all of [the claimant's] caveats accompanying her description of those activities,"[66] because the Ninth Circuit held in *Rollins v. Massanari* that although the claimant's testimony was "somewhat equivocal about how regularly she was able to keep up with all of these activities, . . . it is not [a

---

[63] Docket 10 at 12–18.
[64] Tr. 299–311.
[65] Tr. 301.
[66] Docket 12 at 10 (citing *Smartt v. Kijakazi*, 53 F.4th 489, 500 n.3). (Indicating that because the ALJ provided "clear and convincing" reasons for discounting Claimant's subjective pain testimony elsewhere in the opinion, a list of her caveats accompanying her description of those activities was unnecessary.).

*D.F. v. O'Malley*                                                                                Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings                                        Page 11
Case 3:23-cv-00241-RRB     Document 14     Filed 12/17/24     Page 11 of 19

court's] role to second-guess" the ALJ's reasonable findings.[67] Claimant "consistently presented as being in no acute or apparent distress," and being in "no acute distress," argues the Commissioner, is "not the sort of description . . . one would expect to accompany" a claim of total disability.[68]

But the *Rollins* court also held that "[i]f there is no affirmative evidence that the claimant is malingering, the ALJ must provide **clear and convincing reasons** for rejecting the claimant's testimony regarding the severity of symptoms."[69] Here, there is no evidence of malingering, as specifically indicated by at least one physician.[70] Moreover, the courts repeatedly have observed that "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[71]

The Court finds that the ALJ has not provided clear and convincing reasons for rejecting Claimant's testimony. The ALJ concluded that "claimant's medically determinable impairments reasonably could be expected to cause some of her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence

---

[67] Docket 12 at 7 (citing *Rollins*, 261 F.3d at 857).
[68] *Id.*
[69] *Rollins*, 261 F.3d at 857 (emphasis added) (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998)).
[70] Tr. 880.
[71] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

*D.F. v. O'Malley*  Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings  Page 12
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 12 of 19

in the record for the reasons explained in this decision."[72]  The Commissioner maintains that the ALJ reasonably discounted Claimant's subjective complaints because her testimony conflicted with her work history, objective medical evidence, her activities, and the fact that her physical symptoms were controlled with treatment.[73]  But the ALJ's explanations focus on Claimant working for many years with both RA and vision impairments, suggesting that "there is nothing in the record to show a worsening of her symptoms or a decline in functioning" at her alleged onset date, and therefore "it is reasonable to assume she has continued to retain the capacity to work throughout the period at issue."[74]  Nevertheless, the ALJ then found that Claimant could not perform her past relevant medium capacity work, and should be limited to only light work, suggesting some degree of impairment.  And despite her legal blindness in her right eye, the ALJ opined that she could manage "occasional right depth perception."[75]  The ALJ's decision is fundamentally flawed and internally inconsistent.

### B.    ALJ Evaluation of Medical Opinions

The Commissioner notes that the regulations no longer grant treating physicians' opinions controlling weight in a disability determination.[76]  However, discounting a physician's opinion when it supports a Claimant's subjective complaints still

---

[72] Tr. 23.
[73] Docket 12 at 2–3.
[74] Tr. 23–24.
[75] Tr. 24.  The Court questions whether "right depth perception" is a medically accurate term, or even possible when one is legally blind in the right eye.
[76] Docket 12 at 15.

*D.F. v. O'Malley*                                                                                                           Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings                                                                                             Page 13
Case 3:23-cv-00241-RRB     Document 14     Filed 12/17/24     Page 13 of 19

requires an ALJ to cite **substantial evidence** in support of such findings.[77] Here, the ALJ disregarded the opinions of virtually every treating physician without adequate explanation.[78]

The ALJ found **Dr. Dobson's** "vague, not well-supported by his examination findings, and not consistent with the record as a whole," complaining that Claimant's life-long treating physician failed to explain why Claimant would "need several breaks throughout the day, would frequently have symptoms severe enough to impair her attention and concentration, and would be absent from work twice a month."[79] The ALJ found it significant that Claimant's vision had been impaired since birth, but did not prevent her from working from 2006–2020, and that "there is no evidence the claimant's vision has deteriorated since she stopped working."[80] The Commissioner argues that the ALJ reasonably found **Dr. Dobson's** recommended limitations unpersuasive, because his 2020 opinion "did not explain how [Claimant's] vision impairments interfered with work."[81] But Dr. Dobson clearly stated that Claimant's visual impairments were permanent, and that her symptoms, which included migraines, were severe enough to interfere with attention and concentration needed to perform even simple work tasks.[82] Dr. Dobson ruled out the

---

[77] *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2).").
[78] Tr. 26–29.
[79] Tr. 27.
[80] *Id.*
[81] Docket 12 at 13.
[82] Tr. 878.

use of a computer for extended periods. He opined that she may need "additional time and resources" to accommodate her visual impairment.[83] He expected she would miss work twice per month and would need unscheduled breaks during an 8-hour workday due to photophobia, nystagmus, and migraines, the latter having started in 2018.[84] In short, Dr. Dobson's 2020 opinion clearly explained how Claimant's vision impairments interfered with work. Moreover, it is not difficult to grasp the impact of poor vision and migraines on daily activities. Additionally, the VE testified that "a person who misses one day of work per month or more at unpredictable times will not be able to sustain competitive employment over time because of a loss of productivity and the inconsistency of performance and the unpredictability of when the person will be on the job."[85] The same is true if additional unscheduled breaks were required by the employee.[86] Similarly, a person who is off task for 15 percent of the time due to pain would more probably than not be unable to sustain employment.[87] The VE also testified that an individual limited to standing/walking for only one third of the day would only be eligible for sedentary employment.[88] The ALJ addressed none of this testimony.

The ALJ found **Dr. Ragle's** notes were "vague in terms of work-related limitations" and that he failed to explain how Claimant's joint pain would limit her ability

---

[83] Tr. 552.
[84] Tr. 877–79. The ALJ made no mention of Claimant's migraines.
[85] Tr. 71.
[86] Id.
[87] Tr. 72.
[88] Id.

*D.F. v. O'Malley*   Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings   Page 15
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 15 of 19

to perform light work.[89] The Commissioner cites three isolated instances in **Dr. Ragle**'s medical records from 2020 and 2021 indicating that Claimant felt her RA symptoms were "adequately controlled" on her current regimen.[90] There is no indication of what "adequately controlled" means in the context of RA.[91] The ALJ did not discuss Dr. Ragle's records from 2022 and 2023 which addressed chronic bilateral low back pain, and discomfort and swelling in both legs, which suggests a worsening of symptoms.[92] Nor did the Commissioner acknowledge the 2019 x-rays that showed degenerative changes and multiple bone erosions in Claimant's hands and feet related to the RA.[93] There is no discussion of the impact of bone erosions on an individual's ability to work.

The ALJ found **Dr. King's** opinion that Claimant could not perform sedentary work on a full-time basis unpersuasive, not well-supported by his evaluation findings, and inconsistent with the record as a whole.[94] Although Dr. King reported "an antalgic gait, decreased range of motion of her hips, knees, ankles, and shoulders, pain in multiple joints, and generalized de-conditioning," the ALJ found that "these findings are not reflected in the treating notes."[95] But Dr. King did not treat Claimant. He performed a "work capacity evaluation," identifying major areas of dysfunction in dynamic strength,

---

[89] Tr. 28.
[90] Docket 12 at 6. Tr. 524–31, 971–74.
[91] The ALJ did not discuss Dr. Ragle's records from 2022 and 2023 which addressed chronic bilateral low back pain, and discomfort and swelling in both legs. Tr. 38-40. Nor did the ALJ acknowledge the 2019 x-rays that showed degenerative changes and multiple bone erosions in Claimant's hands and feet related to the RA. Tr. 973–74.
[92] Tr. 38–40.
[93] Tr. 973–74.
[94] Tr. 26.
[95] Tr. 26–27.

positional tolerance, mobility, and balance, with decreased range of motion in her hips, knees, ankles, and shoulders, and pain in multiple joints affected by RA, as well as generalized fatigue.[96] He specifically noted that his findings were consistent with Claimant's self-reported pain. He also observed that Claimant was in more pain when leaving the evaluation than when she arrived, as a result of exertional activities required for the assessment.[97]

The Commissioner argues that Claimant does not "meet her burden" of proving disability because the conditions that she claims caused her to stop working had not deteriorated, and she had worked with them for many years. This reasoning fails. Evidence of deterioration is discussed above. And although the ALJ found that Claimant had worked with her longstanding visual impairments and RA, the ALJ nevertheless concluded at Step 4 that Claimant could no longer perform her past work. Plaintiff accordingly met her burden to show that she could not return to her previous employment. At Step 5, the burden of proof shifted to the Commissioner to find other work in the national economy that Claimant could perform.

The Commissioner makes the circular argument that her physicians' opinions are not strengthened by their consistency with Claimant's subjective complaints, because the ALJ rejected those subjective complaints.[98] Having concluded that the ALJ failed to

---

[96] Tr. 867–74. The Court notes that Exhibit 21-F was provided only in electronic form, and is difficult to read.
[97] Tr. 871.
[98] Docket 12 at 14.

*D.F. v. O'Malley*  Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings  Page 17
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 17 of 19

provide clear and convincing reasons for rejecting Claimant's testimony regarding the severity of her symptoms,[99] the ALJ's analysis collapses.

D. **Instructions on Remand**

Having carefully reviewed the administrative record, including extensive medical records, the Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant failed to provide specific, clear, and convincing reasons supported by substantial evidence for the reasons discussed in this Order.

Further administrative proceedings generally are useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[100] The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when represented by counsel.[101] Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry," including subpoenaing a claimant's physicians.[102]

---

[99] *Rollins*, 261 F.3d at 857.
[100] *Treichler*, 775 F.3d at 1101.
[101] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).
[102] *Id.*

*D.F. v. O'Malley*  Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings  Page 18
Case 3:23-cv-00241-RRB   Document 14   Filed 12/17/24   Page 18 of 19

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 10** is **GRANTED** and this matter is **REMANDED** for further development of the record and a new ALJ hearing.

IT IS SO ORDERED this 17th day of December, 2024, at Anchorage, Alaska.

                                    */s/ Ralph R. Beistline*
                                    RALPH R. BEISTLINE
                                    Senior United States District Judge

*D.F. v. O'Malley*                                                           Case No. 3:23-cv-00241-RRB
Order Remanding for Further Proceedings                                        Page 19
Case 3:23-cv-00241-RRB     Document 14     Filed 12/17/24     Page 19 of 19